## BLUE EARTH VALLEY TELEPHONE COMPANY v. COMMON-WEALTH UTILITIES COMPANY.[1]

May 17, 1918.

No. 20,823.

**Set-off and counterclaim — wrongful use of restraining order prematurely asserted — demurrer.**

Plaintiff, the prior occupant of certain public highways with telephone lines, brought this action to compel defendant, who subsequently entered upon the same highways, placing poles and wires therein for the transmission of electric current, to move its wires to such a distance from plaintiff's as not to endanger the latter's employees and property, and to recover damages caused by defendant's alleged negligent construction of its lines.  On ex parte application plaintiff obtained an order restraining defendant pendente lite from transmitting electric current over its lines until the necessary alterations were made.  This order was modified, but not vacated.  It is *held*:

The damages which defendant claims to have sustained through the operation of this restraining order cannot be pleaded as a counterclaim herein, for they do not arise out of the "transaction pleaded in the complaint as the foundation of plaintiff's claim, or connected with the subject of the action."

Action in the district court for Blue Earth county to enjoin defendant from operating its electric lines between the village of Winnebago and the village of Elmore; to require defendant to locate its lines and wires as far from plaintiff's lines as existing conditions permit and for $2,000 damages and for a restraining order pendente lite.  Among other matters the answer to the amended complaint alleged that the disturbances produced upon plaintiff's lines and all injury and damage to its

[1]Reported in 167 N. W. 554.

telephone lines and systems by the construction and operation of defendant's transmission line, were due solely to the fact that plaintiff's lines and systems were not in a reasonably good state of repair, were not properly constructed, and especially by reason of the fact that a number of the circuits thereon were grounded circuits; and set up a counterclaim for $10,000. From an order, Comstock, J., sustaining plaintiff's demurrer to the answer on the ground that the counterclaim did not state facts sufficient to constitute a counterclaim, defendant appealed. Affirmed.

*A. R. Pfau, Jr., S. B. Wilson* and *C. J. Laurisch,* for appellant.

*Frundt & Morse,* for respondent.

HOLT, J.

The appeal is from an order sustaining a demurrer to a counterclaim.

It is necessary to state generally the cause of action set forth by plaintiff. Plaintiff's business is indicated by its name. The defendant is a corporation engaged in the transmission and sale of electric current for light and power. Both are authorized to occupy public highways in this state with poles carrying the wires used in their business. Plaintiff had so occupied certain highways for a long time, when defendant began thereon to erect its poles and string its wires for transmitting to different cities and villages powerful electric currents. At certain places the poles and wires so erected by defendant crossed those of plaintiff, and at others ran along on the same side of the highway, the poles being set on the same line with plaintiff's. But defendant's poles are taller than plaintiff's, so that the wires thereon are a distance of from 6 to 10 feet above those of plaintiff's where they cross or coincide. The claim of plaintiff is that its wires carry a very weak harmless electric current, and are attached to delicate instruments; that defendant's wires carry a current of high voltage, extremely dangerous should it escape to plaintiff's wires. It charges that the placing of the wires, carrying this deadly destructive current, in so close proximity to plaintiff's wires, subjects its employees, who have to work upon its lines, to extreme peril, and also destroys or renders ineffective its instruments; that, to in a measure avoid this, it is necessary that plaintiff go to great expense, and also that defendant should install certain safety appliances so as to guard against

its heavily charged wires coming in contact with plaintiff's system, or remove them sufficiently from plaintiff's so as to prevent its powerful current from charging plaintiff's wires by induction, and prays relief that defendant be enjoined from carrying current on some of its routes; that in all cases it be required to locate its lines and wires so far from plaintiff's as to minimize the danger of contact and eliminate interference from induction; that plaintiff recover $2,000, the necessary cost of reconstructing and safeguarding its lines from the dangers occasioned by the improper construction of defendant's lines, and have such further relief as may be proper.

The counterclaim as pleaded is too lengthy to be here set out, but the substance thereof is this: That long prior to the construction of defendant's lines it had, to plaintiff's knowledge, obtained franchises and contracts to furnish current to certain villages and cities, and that the lines to carry such current must necessarily be constructed along highways already occupied by plaintiff's lines; that plaintiff likewise knew that its own lines were defectively and negligently constructed, and were in such a state of dilapidation that, no matter how skilfully defendant's lines would be constructed, some disturbance would be caused to plaintiff because of the antiquated construction and disrepair of its lines; that for many months prior to beginning this action plaintiff knew that defendant was constructing its lines for the purposes of giving the villages and cities with which it had contracted a daily 24 hours service of current, and nevertheless plaintiff wilfully neglected to repair its own lines and telephone system with the wrongful purpose of compelling defendant to pay arbitrary sums of money to plaintiff, and, to that end, delayed the institution of this suit until after defendant had constructed its line and had begun to transmit current to the villages and cities referred to; and then by ex parte application obtained an order from the court restraining defendant from transmitting the current for a number of days, and it was only enabled to resume transmitting the same by an order of the court which contemplated that plaintiff should at once make such repairs, and make such alterations in its telephone system as were necessary; that such repairs and alterations could all have been done within 15 days, but, for the purpose of injuring defendant and preventing it from furnishing current to its patrons, plaintiff strung out the

necessary repairs for a period of 40 days, during which time, under the order of court, defendant could supply current between the hours of 5 p. m. and 7 a. m. only; that such dilatory tactics were pursuant to the intent formed long prior to the commencement of this action to compel defendant to accede to plaintiff's unjust demands; that by reason of such interruption of its service, required by the restraining order, great dissatisfaction was occasioned among defendant's patrons, and sales of electricity greatly decreased, and the business standing and integrity of defendant in said places greatly impaired and injured, all in the damage to defendant of $10,000. There are also allegations in respect to some other telephone line which it is claimed plaintiff unsuccessfully attempted to buy in order to extort the greater damages from defendant alleged in the original complaint, not asked for in the amended; but clearly such allegations have no bearing upon the demurrer. Where amended pleadings are served, the original pleadings are out of the case.

Both parties have the right to occupy space in public highways with their poles and wires, provided there is no hindrance of free travel. But every one who thus occupies a public highway to furnish the public with communication facilities or commodities, such as electric energy, is under the legal duty to use due care so as not to impede, injure or endanger another's occupation thereof for a similar purpose. On this appeal we are not concerned about an adjustment of these duties as between plaintiff and defendant, nor need we consider whether priority of occupation gives any preference in respect to duties and obligations. The only question before us is whether a proper counterclaim is pleaded.

No relief is asked in the counterclaim, other than a recovery of damages. There are no averments tending to show that the alleged defective and negligent construction or lack of repair of plaintiff's telephone system occasioned any inconvenience or loss to defendant or injury to its apparatus. No matter how evil plaintiff's intentions were, no damage resulted to defendant from the alleged acts or omissions of plaintiff until the restraining order interrupted the transmission and sale of its electric current. There are no allegations that defendant has expended a single penny to so alter its own system as to avoid the peril which plaintiff's improper construction or repair invites, nor that the defendant is answerable, as a joint tort feasor with plaintiff, to any other person who has

been damaged because of the location of the wires and poles of these two corporations in close proximity and in the condition they are alleged to be in. Therefore it is plain that the counterclaim was nonexistent when plaintiff began this suit, and hence did not arise "out of the transaction pleaded in the complaint as the foundation of plaintiff's claim." Section 7757, G. S. 1913. First Nat. Bank v. Hasie, 57 Kan. 754, 48 Pac. 22. Nor is it connected with the subject of the action—the alleged improper construction and maintenance of defendant's electric current transmission apparatus. Allen v. Coates, 29 Minn. 46, 11 N. W. 132. The counterclaim arises, if at all, from an alleged wrongful use of an ancillary remedy which a litigant may employ to protect his legal rights in a pending action.

Can the wrongful use of the restraining order in this action be asserted as a counterclaim? The answer alleged that the order has been somewhat modified upon defendant's application, but on what terms or conditions does not appear. However, it has not as yet been determined whether plaintiff was or was not entitled to the order; hence no cause of action for the misuse of a legal remedy has accrued to defendant, and his counterclaim is premature. No distinction can well be made between a counterclaim predicated upon damages sustained from the wrongful use of a restraining order, and one based upon an attachment wrongfully resorted to in an action. This court has held that in an action where a plaintiff had made use of an attachment to secure his rights therein the defendant cannot counterclaim by alleging that there was a wrongful recourse to that remedy to the defendant's damage. Schmidt v. Bickenbach, 29 Minn. 122, 12 N. W. 349; Jones v. Swank, 54 Minn. 259, 55 N. W. 1126; Hall v. Parsons, 105 Minn. 96, 117 N. W. 240. It is true, the statute permitting the interposition of counterclaims receives a liberal construction. Hackney v. Fetsch, 123 Minn. 447, 143 N. W. 1128; W. W. Kimball Co. v. Massey, 126 Minn. 461, 148 N. W. 307. Nevertheless, before a cause of action in the nature of a counterclaim can accrue on account of an abuse of legal process in an action, that action must have terminated favorably to the one who asserts abuse, or else the writ or process must have been wholly annulled. In our opinion the cause of action attempted to be set up in the answer does not constitute a proper counterclaim.

Hall v. Parsons, supra, does not support defendant, for there the counterclaim was based upon a valid contract under which the·plaintiff had agreed not to bring suit upon the promissory note declared on in the complaint.

The demurrer was well taken.

Order affirmed.